PETTIGREW, J.
*564 The question before us is whether the trial court erred in finding that the plaintiffs' tort action seeking damages sustained in a work-related accident involving a minor employee is exempted from the exclusive remedy provisions of the Louisiana Workers' Compensation Act ("Act"). The trial court, relying upon jurisprudence out of the second and third circuits, held that minors, who are injured while illegally employed and performing an illegal task, have the option to recover in tort and awarded damages in favor of one of the plaintiffs. For the reasons that follow, we reverse in part, affirm in part, and render judgment dismissing all the plaintiffs' tort claims, with prejudice.
FACTS AND PROCEDURAL HISTORY
Bounce N' Around Inflatables, LLC ("BNA") is a party rental business that provides a variety of inflatables and other items for personal and corporate social events. The inflatables were stored in a warehouse on racks approximately 10 feet high and were moved around the warehouse on dollies, using a battery operated pallet-jack.[1]
Austin Griggs began working for BNA when he was 14 years old. Austin was 15 years old when he was injured on January 31, 2012. According to the record, BNA employed approximately 12 minors at the time of the incident in question. Austin testified that he had never been told by anyone at BNA that because he was a minor, he would need an employment certificate or work permit to work there. Austin was classified as a helper, responsible for cleaning and delivering the inflatables and picking them up from their rental locations.
Austin explained that on the day of the accident, they were picking up and sorting inflatables. As they were trying to get one of the inflatables on the pallet, they realized they needed to use the forklift to move it. Austin described what happened next as follows:
Me and Kenny put it on the forklift. We flipped it onto the prongs. We tried lifting it, and it was leaning off the front of it, so we decided that we needed to balance the weight on there, and I climbed on top of the inflatable to balance it out. It's like-it was just like a normal day. We would normally do that. And then we lifted it. I was on top of the inflatable, and a little bit of slack was hanging off the side, and it started to sway, and that's whenever I fell off the inflatable and I fell onto the ground, and then the inflatable fell behind me .... [W]henever I hit the ground, I was just worried. I didn't know if that inflatable was going to land behind me or if it had even fallen off the forklift. I was just trying to get out of the way, and as soon as I landed and I got in that squatting position and I tried to move, as soon as I reached out my left leg and my right leg was still on the ground, that inflatable fell and hit my lower back, and I just-I fell over.
Kenneth Matherne worked for BNA for approximately two years, from 2010 until 2012. He was asked about the process of moving the inflatables from the forklift onto the racks where they were stored. Matherne testified that it depended on the inflatable, i.e., sometimes they would come off but sometimes they needed some encouragement. He explained that they *565 would either climb the racks to get level with the inflatable or, "[i]f the inflatable was unstable, [and] it had the likelihood to tip off of the forklift,... [they] would kind of just ride them up, stand on them to use [their] weight as a counterbalance to keep them on." Matherne continued, "we would ride it to the level that they would be inserted at so, that way, it wouldn't fall off prior to being put into the rack." When asked about the accident in question, Matherne stated:
To the best of my knowledge, I remember we were cleaning a water slide, which typically are larger and heavier, a little less-balanced. We had finished cleaning it, rolled it up, and we were trying to-this was the end of the shift in the afternoon. We were trying to pick it up. It went higher on a rack, and it was a little well-less-balanced, and I remember-I don't remember how this ended up, but I remember [Austin] was standing on top of it, and he was riding it up as I was-as I was controlling the forklift to lift it up. I recall it becoming unbalanced, beginning to tip. [Austin] realizing that, realizing it was going to fall, took matters into his own hands to control his fall and jumped. When he jumped, he happened to jump to the side that the forklift was leaning to, and the-as he landed, he looked up, and the inflatable fell off the lift and landed on his ... back and side, which caused the pressure to his foot.
Matherne added that only 10 to 15 percent of his job duties required him to spend time working on or around the forklift.
Jack Alan LeBlanc ("Mr. LeBlanc"), BIMA's owner, provided the following explanation on the "Employer Report of Injury/Illness" concerning Austin's accident: "Austin was placing units back in their location spots. The weight of the unit is 350lbs and round. Dolly and forklift. Austin was not running the forklift. The unit was laying flat on the forks and the unit rolled off from the side and caught Austin's back and right foot." Mr. LeBlanc added that Austin was not authorized to operate the forklift and that Austin spent "[m]aybe less than 5 percent" of his time around or working with the forklift.
Austin's mother Tasha testified that she did not know her son was injured prior to arriving to pick him up from work on the day of the incident. When Mr. LeBlanc told Tasha that he had insurance if needed, Tasha informed him that Austin had sufficient insurance coverage. Tasha took Austin to Ascension Urgent Care that evening, where he was diagnosed with a closed metatarsal fracture and told to seek further evaluation and treatment with an orthopedist.
Tasha brought Austin to Baton Rouge Orthopedic Clinic ("Clinic") the following morning. She began filling out paperwork for his visit with her insurance information and replied "work" to the question, "How did injury occur?" Tasha explained that when she returned the information sheet at the counter, she observed a Clinic employee "white out" some of the information and write "WC" across the whited out section. Tasha then called Mr. LeBlanc from her cell phone to arrange for Austin to be treated using Mr. LeBlanc's insurance. Mr. LeBlanc told Tasha that if they used his insurance, they could not say anything about Austin being on the forklift.
Austin was initially seen at the Clinic by Dr. Ricardo Rodriguez, who ordered an MRI for Austin's foot. It was later determined that Austin needed surgery to install fixation hardware for several fractures in his foot, which was performed by Dr. James Lalonde, Jr. A second surgery was required for removal of the hardware.
*566 According to the record, throughout Austin's treatment, Mr. LeBlanc's workers' compensation insurer, Louisiana Commerce & Trade Association Self-Insurers' Fund ("LCTA"), paid Austin a weekly compensation benefit as well as all of his medical bills. Even after Tasha decided to pursue a civil claim, she did not decline any workers' compensation benefits for Austin.
Tasha testified that after speaking with her older son Trey, who also worked at the company, she found out exactly what had happened on the day of Austin's accident. She believed that Austin's work at the company was unsafe, yet allowed him to return to work there in September 2012. When asked if she had requested that Mr. LeBlanc make any changes to Austin's job requirements in order that he be allowed to continue to work there, Tasha replied, "No, I did not. My oldest son was a manager, and I spoke with him about anything that I needed to know." She further denied ever expressing to Mr. LeBlanc any concerns that Austin's position was unsafe or that she had any reservations about him going back to work.
As a result of Austin's injuries, Tasha and Austin (sometimes collectively referred to as "the plaintiffs") filed suit against BNA and its insurer, Steadfast Insurance Company ("Steadfast"), and against Mr. LeBlanc, individually, seeking recovery for the damages Austin sustained in the accident, as well as a loss of consortium claim.[2] LCTA subsequently filed a petition of intervention and a petition for declaratory judgment. LCTA alleged that because Austin collected workers' compensation benefits from, or on behalf of, his employer, through its membership and policy with LCTA, he was now barred from maintaining a suit alleging fault and negligence due to the exclusive remedy provisions of the Act. Moreover, LCTA asserted that Tasha's loss of consortium claim was a derivative claim, also barred by the exclusivity provisions of the Act. Nonetheless, should the plaintiffs be allowed to maintain their suit in tort, LCTA asserted it should be entitled to immediate recovery of all workers' compensation payments paid to, or on behalf of, Austin.
Thereafter, various pleadings were filed by the parties, including motions for summary judgment and exceptions raising the objection of no cause of action filed by both BNA and Mr. LeBlanc. BNA asserted that Austin's exclusive remedy was in workers' compensation and not in tort. Mr. LeBlanc claimed he was statutorily immune as he was a member of a limited liability company ("LLC"). The trial court denied the exceptions and the motions for summary judgment. BNA and Mr. LeBlanc applied for supervisory review with this court. A five-judge panel granted in part and denied in part the writ as follows: 1) sustaining Mr. LeBlanc's no cause of action exception, finding the plaintiffs did not allege he acted outside of his capacity as a member of BNA; 2) remanding to allow the plaintiffs a chance to amend the petition to state a cause of action, if they can, against Mr. LeBlanc; 3) denying the writ in all other respects. Griggs v. Bounce N' Around Inflatables , 2013 CW 2258 (La. App. 1 Cir. 5/16/14) (unpublished writ action).
After the plaintiffs filed a supplemental and amending petition, Mr. LeBlanc filed another no cause of action exception raising the same argument concerning his status *567 as a member of an LLC. Following a hearing, the trial court sustained the exception, finding that the amended petition failed to raise any new allegations that would give rise to a cause of action against Mr. LeBlanc.[3]
The matter proceeded to a bench trial on March 2, 2017, at which time the trial court heard from numerous witnesses and considered the documentary evidence introduced by the parties. On April 28, 2017, the trial court issued written reasons for judgment, finding that Austin was illegally employed by BNA and engaged in an illegal task. Citing the cases of Ewert v. Georgia Casualty & Surety, Co. , 548 So.2d 358 (La. App. 3 Cir. 1989), writ denied, 551 So.2d 1339 (La. 1989), and Patterson v. Martin Forest Products, Inc. , 34,258 (La. App. 2 Cir. 12/15/00), 774 So.2d 1148, writ denied, 2000-3559 (La. 3/16/01), 787 So.2d 311, the trial court concluded that the plaintiffs were not confined to the exclusivity of the Act and could proceed in tort. In a judgment signed the same date, the trial court rendered judgment in favor of Austin and against BNA and Steadfast in the amount of $125,000.00 in general damages and $24,517.93 in special damages, plus legal interest and all costs of the proceedings. The trial court denied Tasha's claim for loss of consortium. The trial court further found that LCTA was entitled to reimbursement from Austin for the sums paid for medical expenses, mileage, and lost wages, totaling $25,867.93.
Following the April 28, 2017 judgment by the trial court, two separate appeals were filed by the plaintiffs and by BNA and Steadfast ("BNA"). On appeal, BNA raises three assignments of error for our review:
1. The Trial Court erred in ruling the exclusive remedies of the Louisiana Workers' Compensation Act did not apply.
2. Alternatively, the Trial Court erred in ruling that the relatively null contract was not confirmed by the plaintiffs.
3. Alternatively, the general damage [award] is an abuse of discretion.
The only issue raised on appeal by the plaintiffs is the amount of general damages awarded by the trial court. The plaintiffs argue that the trial court failed to consider Austin's age relative to his current arthritic symptoms and the likelihood of further development of arthritis.[4]
EXCLUSIVITY OF THE WORKERS' COMPENSATION ACT
On appeal, BNA argues that the Act provides that workers' compensation is the exclusive remedy for injuries occurring within the course and scope of employment. Noting that the exclusive remedy provision is applicable to "every person" injured in the course and scope of their employment, BNA submits that to carve out a jurisprudential exception is an error of law. In support of its position, BNA relies upon the cases of *568 Mott v. River Parish Maintenance, Inc. , 432 So.2d 827 (La. 1983) and Noble v. Blume Tree Services, Inc. , 94-0589 (La. App. 1 Cir. 11/10/94), 646 So.2d 441, writ denied, 94-2999 (La. 2/17/95), 650 So.2d 252.
In response, the plaintiffs argue that the cases cited by BNA are factually and legally distinguishable from the instant matter. Instead, the plaintiffs assert that this case falls squarely within the holdings of Ewert and Patterson (the same cases cited by the trial court below). According to the plaintiffs, the holdings of Ewert and Patterson provide that minors injured while engaging in illegal employment (working around power-driven machinery) and performing an illegal task (working directly with power-driven machinery) have the option of proceeding with their claims under either workers' compensation or negligence. The plaintiffs assert that it is the combination of "illegally hired-performing an illegal task" that sets this case factually and legally apart from other cases involving minors "legally hired-performing illegal task" and those minors "illegally hired-performing a legal task."
As discussed in detail below, BNA counters that the plaintiffs' reliance on Ewert and Patterson is entirely misplaced in light of the first circuit's rejection of these cases in Noble , supra. Moreover, BNA further asserts that the plaintiffs' theories regarding illegal/legal hiring and illegal/legal task scenarios are immaterial because the exclusivity provision of the Act is applicable to "every person," which includes "all minors, whether legally employed or not." Noble , 646 So.2d at 444 (emphasis in original). We agree with BNA on this issue.
The exclusivity of the remedies provided by the Act and the effect of the Child Labor Law, La. R.S. 23:151, et seq. , thereon are at issue herein. The Child Labor Law prohibits the employment of minors in certain industries or where they would be subject to certain conditions or use certain types of equipment. La. R.S. 23:161, et seq. Specifically, as it relates to the instant case, La. R.S. 23:163 provides that minors under the age of sixteen shall not be employed to work "[i]n, or about, or in connection with power-driven machinery." La. R.S. 23:163(2). Moreover, employers of minors are required to keep on file, and readily accessible, an employment certificate for each minor they employ. La. R.S. 23:182. There is no question in this case that Austin worked around power-driven machinery, i.e., the forklift, during his employment at BNA, in violation of La. R.S. 23:163(2). Additionally, Austin worked at BNA without an employment certificate, in violation of La. R.S. 23:182.[5]
The dispute between the parties turns on conflicting jurisprudence regarding whether an exception exists to the exclusive remedy provision of the Act in the instance where a minor, who is employed in violation of the Child Labor Law, is injured while performing tasks in violation of the Child Labor Law, As noted above, the trial court ruled that cases from the second and third circuit controlled. In sum, the dispute herein centers on which statutory interpretation of La. R.S. 23:1035 by the Louisiana judiciary controls. As such, a review of relevant case law at issue is in order.
Louisiana Revised Statutes 23:1032 of the Act provides that the benefits provided therein will be the exclusive remedy for an injured employee against its employer. Further, La. R.S. 23:1035 identifies which *569 employees are covered by the Act and provides, in relevant part, as follows: "The provisions of this Chapter shall also apply to every person performing services arising out of and incidental to his employment in the course of his own trade, business, or occupation, or in the course of his employer's trade, business, or occupation...." La. R.S. 23:1035(A) (emphasis added).
Prior to 1948, the Act expressly excluded from coverage minors who were employed in jobs for which they were below the minimum legal age to legally perform. See Mott , 432 So.2d at 831 and Noble , 646 So.2d at 442. In 1948, the express provision excluding minors illegally employed was amended and the exclusion was removed. As discussed in detail below, subsequent court decisions have interpreted this action as legislative intent to include all minors within coverage of the Act.
Following the 1948 amendment, several cases arose wherein a minor injured while performing illegal jobs/tasks challenged application of the Act on the basis that a minor has no capacity to contract and thus the "employment contract" between the minor and employer for illegal employment was a relative nullity. In Matthews v. Buff Hottle Shows, Inc. , 109 So.2d 261 (La. App. 1 Cir. 1959) and Messer v. Bagwell Coatings , Inc. , 283 So.2d 279 (La. App. 1 Cir. 1973), this court rejected the argument and found that the Act covered both illegal and legal employments and activities by minors.
In Matthews , this court held that a fifteen-year-old illegally operating a carousel had no cause of action to proceed in tort:
It is self-evident that the law in this State ... applies to a minor injured while illegally employed in a prohibited employment and no other remedy may be pursued by the lawful representative of the injured minor. Furthermore, the provisions of the act apply to a minor in such a situation by operation of law under a Conclusive presumption of consent and no Actual agreement or consent on the part of the minor or his or her parents or other lawful representative is Necessary or required.
Matthews , 109 So.2d at 266 (emphasis in original).
In Messer , this court rejected the tort claims of a minor employed as a painter, who was injured in an eighty feet fall off of scaffolding, finding:
The question presented has already been decided by this court in Matthews v. Buff Hottle Shows , 109 So.2d 261 (La. App. 1 Cir. 1959), in which we held that, since 1948, the Workmen's Compensation Act has been the exclusive remedy, against the employer, of a minor injured in the course and scope of his employment, even though illegally employed in a hazardous business in contravention of a prohibitory law.
Messer , 283 So.2d at 280 (emphasis added).
In 1975, the Act was modified again, this time to make the coverage under the Act compulsory rather than mandatory and added express language stating that the Act covered "every person." This modification became what is now La. R.S. 23:1035. No change was made by the 1975 revisions with respect to which persons were covered by the Act. The Louisiana Supreme Court concluded that lack of modification of who is covered was a legislative reaffirmation of its intent to include all minors, illegally or legally employed, within the coverage of the Act. Mott , 432 So.2d at 831.[6]
In Mott , supra, the Louisiana Supreme Court issued an opinion that has been read *570 by later courts to support the classification of employment of minors into "illegal/legal employment" and "illegal/legal task" scenarios. There, a minor hired to assist in clearing weeds from the levee was injured in successive incidents-one involving weed spray and the other involving the operation of a tractor. Both activities qualified as prohibited tasks for minors under La. R.S. 23:161, yet the plaintiff's employment in general was considered legal under child labor laws. The plaintiff in Mott alleged that the Act did not apply where a minor is injured as a result of being directed to or permitted to perform tasks prohibited by the Child Labor Laws. The plaintiff also sued his supervisors asserting that their telling him to perform illegal tasks amounted to an intentional tort by the supervisors for which the company was vicariously liable.
The Louisiana Supreme Court rejected both of the plaintiff's arguments. The court first held that the defendants' violation of the Child Labor Law did not take the plaintiff outside of the Act. Mott , 432 So.2d at 830-832. The Mott court focused on the legislative history of La. R.S. 23:1035 in reaching its conclusion, noting, "It is the deletion of the previous provision excluding minors from coverage which evidences the legislative intent to include minors, whether employed in violation of law because of their age or not, within the coverage of the workers' compensation act." Mott , 432 So.2d at 831.
Yet, despite its detailed exploration of the legislative history and statements that the Act applies to both legally and illegally hired minors, the Mott court included a footnote, wherein the court expressly declined to address the issue of coverage for the illegally hired minor, stating:
A question has been raised as to whether there is a distinction between the case where the minor is hired in violation of law or where, as here, he is legally hired but required to perform a task in violation of law. While there may be some support for such a distinction, we are not here faced with that issue and express no view on it.
Mott , 432 So.2d at 832 n.5.
The Mott footnote has been interpreted by later courts as being limited to those instances where an employee is legally hired but performing an illegal task. Additionally, the other effect of the footnote has been to create division amongst the circuits.
In Ewert , the third circuit addressed the issue left hanging in the footnote-i.e., whether the exclusivity provision of the Act applies to minors who are illegally hired and performing illegal tasks. In Ewert , a minor sustained injuries after a tree fell on him while employed in the logging industry-a clearly prohibited employment under La. R.S. 23:161. After quoting the Mott footnote, the Ewert court began by noting that: "[n]o Louisiana court has yet to consider the precise issue of whether the exclusivity provision should be held not to apply to the illegal employment of a minor." Ewert , 548 So.2d at 360. The Ewert court further found that the Mott court's "careful avoidance of the question posed by illegal employment encourages us to believe that the supreme court is prepared to examine the wisdom of a policy decision giving the minor a choice" of proceeding in tort in such a situation. Ewert , 548 So.2d at 361.
*571 The Ewert court held that illegal employment contracts involving minors were relatively null under La. Code Civ. art. 1919 (contracts made by those without legal capacity are relatively null); therefore, an illegally employed minor can voluntarily opt out of workers' compensation coverage and proceed in tort. Id. The Ewert court's decision was based heavily on policy determinations. The court noted the policies in other states where minors injured while illegally employed are allowed to choose between proceeding under workers' compensation or tort. The Ewert court held that where the policy of exclusive remedy under the Act "clashes head-on" with the policies of the Child Labor Law-the policy considerations of the Child Labor Law should prevail. The court concluded that an employer should not be able to benefit from a contract that is legislatively condemned. Ewert , 548 So.2d at 362.
The first circuit has rejected the holding of Ewert in Noble v. Blume Tree Services, Inc. , supra. In Noble , a minor was injured while employed with a tree service in violation of La. R.S. 23:161, but engaged in the nonprohibited task of flagging traffic. The issue before this court was whether a minor illegally hired but performing a legal job at the time of his injury was barred from bringing suit in tort by the exclusivity provision of the Act. In other words, this court considered whether illegal employment in itself was sufficient to circumvent compulsory application of the Act.
In Noble , the plaintiff argued that his employment contract was a relative nullity as he had no capacity to contract as a minor. Further, the plaintiff suggested that the footnote in Mott had "tacitly overruled" the earlier cases of Matthews , supra, and Messer , supra. The plaintiff further suggested that based on that tacit overruling, the first circuit was free to follow Ewert . The Noble court declined to do so.
Instead, the Noble court, while acknowledging that the Mott decision had failed to directly address the question of coverage in the context of illegal hiring, concluded that the reading of the Mott footnote by the Ewert court was too broad. The Noble court looked to the two dissents in Ewert noting Judge Foret's labeling of the footnote as "unfortunate dictum," as well as Judge Foret's observation that the majority had fashioned a cause of action of a punitive nature. The Noble court cited, with favor, Judge Foret's observation that "Louisiana Courts are not permitted to, and indeed should not, glibly create causes of action for damages which are not founded on legislation."Noble , 646 So.2d at 444 (citing Ewert , 548 So.2d at 364 ).
The Noble court explained the rejection of the majority in Ewert , noting a reluctance to "legislate" punishment:
As the supreme court noted in Mott , the legislature intended to provide worker's compensation coverage for all minors, whether legally employed or not, when it deleted the provisions excluding coverage for illegally hired minors in 1948, and it reaffirmed that intention in 1975. We may not ignore that intent and the long-settled jurisprudence of this circuit to legislate punishment in this type of case. Even if that were within our power, we would not be inclined to do so in a case such as this where the minor was injured while performing a legal task.
Noble , 646 So.2d at 444 (emphasis in original, footnote omitted). Based on the above reasoning, the Noble court held that a minor who is hired in violation of the Child Labor Law, but who is injured while performing a task permitted by those laws must seek recovery under the Act.
Another case cited with favor by the plaintiffs and the trial court is Patterson , *572 a case in which a seventeen-year-old plaintiff was injured while working at a saw mill. The second circuit expressly held that it would follow Ewert , and not Noble , holding that a "minor, whose very employment is in contravention of the Child Labor Law, La. R.S. 23:151 et seq., and who sustains injury while so employed, may elect to recover in either workers' compensation ... or in tort." Patterson , 774 So.2d at 1152.
We note that the Louisiana Civil Law Treatise recognizes the complication created by the conflicting holdings of cases like Ewert and Noble :
The problem probably calls for legislative consideration .... The legislature should decide whether loss of tort immunity is the proper sanction for an employer who violates the Child Labor Law. If so, this sanction should be specifically stated. If not, an appropriate and specific sanction should be provided. In that process, one should not lose sight of the concept that if a penalty is regarded as too harsh, it might never be applied, even though some penalty of a lesser nature would be. In other words, the sanction should fit the violation, or else the violation might go unpunished.
Malone & Johnson, Workers' Compensation Law and Practice § 53, at 75, in 13 Louisiana Civil Law Treatise (5th ed. 2010). Nonetheless, until the legislature says otherwise, we will continue to follow the reasoning set forth in the Mott case, i.e., that since the 1948 amendments to the Act, the exclusivity provisions apply to "every person," including all minors, legally or illegally employed, and that a violation of the Child Labor Law does not remove a plaintiff from the exclusivity of the Act. We decline to follow the jurisprudentially created rule that the second and third circuits have elected to follow, which would have allowed the plaintiffs in this case to elect a tort remedy. The plaintiffs' exclusive remedy herein lies in workers' compensation.
CONCLUSION
For the above and foregoing reasons, we find the trial court erred in finding that the plaintiffs were not confined to the exclusivity of the Act. We reverse that portion of the April 28, 2017 judgment awarding damages in favor of Austin Griggs and against BNA and Steadfast in the amount of $149,517.93, plus legal interest and all costs. We reverse that portion of the April 28, 2017 judgment awarding LCTA reimbursement on its intervention claim in the amount of $25,867.93, plus legal interest. We affirm the trial court's denial of Tasha Griggs' loss of consortium claim and render judgment dismissing, with prejudice, all of the plaintiffs' tort claims against BNA and Steadfast. All costs associated with this appeal are assessed against the plaintiffs, Tasha and Austin Griggs.
REVERSED IN PART; AFFIRMED IN PART; RENDERED.
Guidry, J., concurs in the result.

The terms "pallet-jack" and "forklift" were used interchangeably by several witnesses at trial. It is clear, however, that the witnesses were referring to the same piece of equipment.

Austin attained the age of majority while this suit was pending in the trial court. Plaintiffs filed a third supplemental and amending petition to amend the original petition to name Austin individually as a proper party plaintiff. However, the suit caption was never amended.

Although we have been unable to locate a judgment dismissing the plaintiffs' claims against Mr. LeBlanc, it is clear from the record that Mr. LeBlanc, in his individual capacity, was not a party to the trial below. Mr. LeBlanc is not listed as a party defendant in the Pretrial Order submitted by the parties. Moreover, the only reference to Mr. LeBlanc in the judgment before us is to his presence at the trial, which, according to the transcript, was required as he was designated as the corporate representative for BNA.

Because we find the plaintiffs' exclusive remedy in this case lies in workers' compensation and render judgment dismissing the plaintiffs' tort claims, with prejudice, the amount awarded by the trial court for general damages is a moot issue.

The penalty provisions in the Child Labor Law do not provide for exclusion of workers' compensation benefits. Rather, there are criminal sanctions and civil penalties in place for employers found to be in violation of the provisions of the Child Labor Law. See La. R.S. 23:231.

In Mott , the supreme court noted that its conclusions were supported by the fact that the legislature would have been aware of appellate court decisions rendered between 1948 and 1975 upholding application of the Act for minor employees who were below the minimum age prescribed by law for certain employment; thus, the legislature's use of the term "every person" In the coverage provision must have been with the intent that such minors remain covered under the Act. Mott , 432 So.2d at 831.